100 So.2d 173 (1957)
Ruby SMITH, a widow, Appellant,
v.
Carl H. MOTT and Richard Earl Franks, Appellees.
Supreme Court of Florida.
December 4, 1957.
On Rehearing February 12, 1958.
*174 Nichols, Gaither, Green, Frates & Beckham and Sam Daniels, Miami, for appellant.
Wicker & Smith, Miami, for appellees.
DREW, Justice.
The sole question presented here is whether a witness may lawfully testify concerning the result of a blood alcohol analysis which the witness did not himself perform, but which was made by the State health officer pursuant to law.
The question arises out of an action by a widow to recover for the wrongful death of her husband, who, while walking across a highway, was killed by a truck driven by one defendant and owned by the other. Contributory negligence of the deceased was asserted as a defense. A jury verdict and judgment were entered in favor of both defendants.
In the course of the trial, the county medical examiner (a witness for plaintiff) testified that he examined the decedent's body after death, and as part of his examination he took a blood sample, designated it by name and number and sent it to the laboratories of the Florida State Board of Health in Miami for analysis.[1] The result of the analysis was sent by the Board of Health to the medical examiner, where it became a part of his official records and reports. After referring to his record and notes, the medical examiner testified, "the report was that in the case of Ralph Smith, Medical Examiner case, Broward County, No. 382-55, blood ethyl alcohol was 0.210 percent by weight * * *." The technician who actually made the blood alcohol analysis was not called by either side as a witness; and before the witness was allowed to give the above testimony plaintiff's attorney made the following objection, which was overruled:
"We will object to that, because that would be secondary evidence and hearsay evidence. The report that was made by someone else other than the doctor  that person would be the one to state the nature of the test made and the type of report or findings that person found * * *."
*175 The medical examiner then testified that in his opinion a person whose blood had the ethyl alcohol content reported in the analysis would be drunk.
The report of the Board of Health did not state the method of the test or the type of equipment, but the medical examiner testified that "At that time, to my definite knowledge, the laboratory upstairs [the Board of Health] was using the chemical test devised by Dr. Getler." The medical examiner then testified on redirect examination extensively as to the method of performance and the accuracy of the test.
McCormick[2] summarizes the requirements which some courts have made for introduction of the results of the tests as follows:
"The party offering the results of any of these chemical tests must first lay a foundation by producing expert witnesses who will explain the way in which the test is conducted; attest its scientific reliability, and vouch for its correct administration in the particular case."
An examining doctor may need to send such elements as blood to adequately equipped laboratories to best accomplish his examination, and "When properly made the results of such examination or analysis shall be admissible at the trial as evidence in the cause." Depfer v. Walker (on rehearing), 1936, 125 Fla. 189, 194, 169 So. 660, 663. Such results, however, must be introduced in evidence through competent witnesses:
"Because of the rule against hearsay, the report of a chemist, bacteriologist, or laboratory technician as to the result of an examination made by him under the statute is not competent evidence in a case of this kind, but the chemist or bacteriologist who made the examination or the analysis, if shown to be competent to speak as an expert, may testify as to what it showed." Depfer v. Walker, supra.
Appellees (defendants below) argue that where a laboratory test has been made by a state agency under a duty to perform such tests the agency's report of the result is admissible "as competent evidence of the matter or fact therein recited" under the "public record" exception to the hearsay rule. This point was not considered in the Depfer case, supra; but this Court held in Mutual Life Ins. Co. of New York v. Knight, 1937, 130 Fla. 733, 178 So. 898, 900, rehearing denied 1938, 130 Fla. 741, 178 So. 901:
"The report on the specimen of sputum from the insured made and reported by the state board of health was not admissible unless properly taken, marked, and authenticated as the law directs, but the record discloses that these formalities were complied with, that it was properly taken, mailed, examined, by the state board of health, and certified to have been found `positive,' which was sufficient."
"As to the specimen of sputum, it is shown that it was regularly taken and mailed to the state board of health laboratory and its report received therefrom which was regular and showed the result found. This is a duty imposed on the state board of health and we hold its report in response to such request prima facie evidence of what it purports to be. If its verity is to be overthrown, the duty is on the one challenging it to do so.
"In this case, the report on the specimen amounted to no more than secondary evidence as it merely corroborated the testimony of the attending physician."
The secondary character of the evidence in the Mutual Life Insurance case only affected the weight to be accorded it and not its competency.
*176 We see no inconsistency in the Depfer case and the Mutual Insurance Company case. Nor is there any inconsistency in the views of McCormick and of this Court if we recognize the difference in a report of this kind prepared by a recognized public agency in the performance of its duties and a report prepared by a private chemist or analyst for the use of private interests. In the former case, the rule in the Mutual Insurance Company case applies while in the latter, the rule in the Depfer case and that stated by McCormick would be applicable.
In the Mutual Insurance Company case we held that such evidence was admissible as a public record. We emphasize the fact that in reaching that conclusion we gave substantial consideration to the fact that the specimen there was regularly taken, mailed to the State Board of Health laboratory in a routine manner and that all of the procedure followed was regular in every respect and done in accordance with the duty imposed on that branch of the government vested with this duty and charged with this responsibility; that when such was made to appear, the report was prima facie evidence of that which it purported to disclose. There is a solid basis for this holding. One of the basic reasons for holding it admissible as evidence and accepting it as such is the high probability of its truthfulness and verity. It is admissible for much the same reason that evidence is admissible under the res gestae rule. One of the factors for holding that evidence otherwise inadmissible, is admissible under the res gestae rule, is that it is usually given in such close proximity to the main event as to preclude the likelihood of reflection and fabrication.[3] Another reason for holding the evidence in this case admissible is that persons hired by a governmental agency to perform chemical tests will be presumed to have been properly qualified and to have skillfully performed their duties unless contradictory testimony is offered. Public records are made as a matter of routine and preserved in the interest of the general welfare. The investigation is impersonal to those charged with the duty of making it. The prime object is to determine the facts by using acceptable methods and to preserve those facts in the interest of the state for its use and the use of its citizens. There is little likelihood of or reason for fabrication and no purpose to be served by it. In those cases where, as here, it is shown that such reports are prepared in the manner prescribed by the statute and have become a part of the public records they are, as said in the Mutual Life Insurance Company case, prima facie evidence of what such document purports to show. Moreover, as stated in the Mutual Insurance Company case, "If its verity is to be overthrown, the duty is on the one challenging it to do so."
Affirmed.
TERRELL, C.J., and ROBERTS, THORNAL and O'CONNELL, JJ., concur.

On Rehearing
PER CURIAM.
A rehearing having been granted in this cause and the case having been further considered upon the record and upon briefs and argument of attorneys for the respective parties; it is thereupon ordered and adjudged by the Court that the judgment of affirmance of the Circuit Court in and for Dade County in this cause be, and it is hereby reaffirmed and adhered to on rehearing.
TERRELL, C.J., and ROBERTS, DREW, THORNAL and O'CONNELL, JJ., concur.
NOTES
[1] Sec. 381.331, Florida Statutes 1955, F.S.A.
[2] McCormick on Evidence, page 377.
[3] 32 C.J.S. Evidence § 417, p. 45; 77 C.J.S. page 274.