(No. 36244. )
MARIAN E. WOOLLEY, ADMRX., Appellant, *vs.* HAFNER'S WAGON WHEEL, INC., Appellee.

*Opinion filed May 19, 1961.—Rehearing denied September 20, 1961.*

Bozeman, Neighbour & Patton, of Moline, (Virgil Bozeman, and Hubbard B. Neighbour, of counsel,) for appellant.

MORAN, KLOCKAU, MCCARTHY, SCHUBERT & HENSS, of Rock Island, (FRANK G. SCHUBERT, of counsel,) for appellee.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

Marian E. Woolley, administratrix of the estate of Winton K. Woolley, deceased, brought an action under the Liquor Control Act against Hafner's Wagon Wheel, Inc., a tavern, for loss of means of support in consequence of the intoxication and resulting death of her husband. The jury found for the defendant. The plaintiff appealed to the Appellate Court, and the judgment was affirmed. (*Woolley v. Hafner's Wagon Wheel, Inc.,* 27 Ill. App. 2d 1.) We have granted plaintiff's petition for leave to appeal to this court.

Plaintiff contends that the trial court and the Appellate Court erred in holding there was insufficient foundation for the admission of the results of a test of blood taken from the body of plaintiff's decedent, and also contends that the trial court improperly refused to give plaintiff's tendered instruction to define the term "intoxication."

For the purpose of this opinion, it is unnecessary to go into the testimony concerning the facts relevant to the occurrence itself. We turn our attention immediately to the question of whether or not there was sufficient foundation laid to admit evidence concerning the chemical tests upon the blood specimen involved. This court has never before passed upon the admissibility of chemical tests upon blood specimens or the foundation required therefor. As to the question of the admissibility of evidence obtained by means of chemical analysis, on the issue of intoxication, we adopt the view expressed in the opinion of the Appellate Court in the instant case that, subject to a proper foundation, the results of a drunkometer test and blood alcohol test are

competent and admissible on the issue of intoxication. This view is in accord with the weight of authority in this country, and we believe it to be logically sound. The defendant concedes this to be the rule but contends that no proper foundation was laid for the admission of the results of the blood alcohol test in the instant case.

The evidence offered to lay a foundation for the admission of the blood alcohol test in evidence, reveals that Edward Park, employee of the Quad-Cities Pathologists Group, took the specimen on the night of January 2, 1957, the day of the occurrence, and placed it in a refrigerator in the laboratory of the Moline Public Hospital, Moline, Illinois, after labeling it and making an entry in the night-call book; that the next morning the specimen was picked up by Charles D. Lantz or Dwight Summers, both employees of the Quad-Cities Pathologists Group; that Lantz analyzed the specimen that day at the Group's laboratory in St. Luke's Hospital, Davenport, Iowa; that entries made in records kept by the laboratory were taken from the information contained on the label of the bottle containing the specimen. Defendant contended that the evidence above recited did not constitute a sufficient foundation for the admission of the results of the test into evidence for the reason that no one person connected with the Group could testify as to the actual transportation of not only Woolley's blood specimen but any blood specimen; that the Group admitted that no records of any kind were kept with regard to the transportation and delivery of blood specimens by its organization, and that the evidence of the blood analysis was therefore inadmissible. However, the evidence further reveals that Lantz and Summers, coemployees of the Group, were the only persons who ever delivered specimens from the laboratory at Moline Public Hospital, Moline, Illinois, to the laboratory at St. Luke's Hospital, Davenport, Iowa, and that there had never been a single case of loss, misplacing, mislabeling or tampering with a blood specimen handled by

the Group nor had there ever been a single case of false or incorrect entry in any book of record of the Group with respect to a blood specimen.

The Appellate Court concluded that the testimony offered failed to establish and left to speculation the identity of the person or persons who took the blood specimen from the refrigerator in the Moline Public Hospital laboratory and delivered it to the chemist in the laboratory at St. Luke's Hospital in Davenport, Iowa. The court noted that a Mrs. Rietus, a secretary to whom Park addressed a note advising that the Woolley blood specimen had been placed in the refrigerator to be picked up and delivered to the laboratory, in Davenport, was not called to identify the person who removed the blood from the refrigerator in the Moline Public Hospital laboratory for delivery to the laboratory in Davenport. The Appellate Court further concluded that no evidence was offered to establish the unchanged condition of the blood specimen from the time of the taking until analysis with the observation that a blood specimen is something that could be conceivably tampered with.

The cases cited by the defendant and relied on in the Appellate Court opinion are criminal cases from other jurisdictions. Those cases hold that identity and unchanged condition must be first established before a blood specimen can be allowed in evidence and that, in the absence of such proof, it is improper to receive a chemist's testimony or his report in evidence on trial. (*Rogers* v. *Commonwealth,* 197 Va. 527, 90 S.E.2d 257; *People* v. *Sansalone,* 208 Misc. 491, 146 N.Y.S. 2d 539.) Plaintiff cites cases from foreign jurisdictions wherein blood tests and stomach tests were admitted in evidence even though it was conceivable that the specimen could have gotten into the hands of some unauthorized person and where each link in the chain of evidence relied on to identify the specimen and condition was not proved. *Nichols* v. *McCoy,* 38 Cal.2d 447, 240 P.2d 569; *Smith* v. *Mott* (Fla. 1958), 100 So.2d 173;

*Ritter* v. *Village of Appleton,* 254 Minn. 30, 93 N.W.2d 683; *Schacht* v. *State,* 154 Neb. 858, 50 N.W.2d 78; *Commonwealth* v. *Mazarella,* 279 Pa. 465, 124 Atl. 163.

While plaintiff points out that certain cases cited by her are not criminal cases, neither party delves into the question of whether a different rule should obtain in civil cases than in criminal. The general rule is, of course, that in a criminal case, the State must prove its case and each and every necessary element therein beyond a reasonable doubt in order to obtain a conviction. The degree of proof in a civil case is not that stringent, but the rule is that the plaintiff must prove his case by a preponderance or greater weight of the evidence. As the degrees of proof required in civil and criminal cases differ, we are therefore presented with the problem as to whether the foundation required to admit the analysis of a blood test into evidence is the same in both civil and criminal cases. Plaintiff states that the Appellate Court opinion has made the plaintiff responsible for the internal procedures of the analyzing laboratory over which she has no control and distinguishes certain cases cited by defendant by pointing out that the sample herein taken was taken by the laboratory that analyzed the specimen and never left the hands of the personnel of the laboratory; that there was no need to use intermediaries to deliver the specimen or to use persons with any interest in tampering with or molesting the specimen.

The court in the case of *Schacht* v. *State,* 154 Neb. 858, 50 N.W.2d 78, apparently recognized that in a case where litigation is not necessarily contemplated, the organization handling the specimen cannot be expected to take unusual precautions with it. In our opinion, in a civil case, the foundation laid for introduction of evidence of a blood analysis need not preclude every possibility of a doubt as to the identity of the specimen or the possibility of a change of condition in the blood. If the routine and procedures of a laboratory are shown by the evidence as having been com-

monly accepted by the medical profession, and the business of the laboratory is the securing, handling and analysis of blood specimens, amongst other types of specimens, those routines and procedures ought to be acceptable to the courts. Under the circumstances of this case, it was unreasonable to make the plaintiff responsible for the procedures and routines of a group of doctors when she is powerless to affect or control the routines or procedures. The fact that the internal workings of a laboratory permit one or more employees to handle a blood specimen and to transport the same should not bar the admission into evidence of the results of blood tests nor should the fact that a blood specimen is something that could conceivably be tampered with make that evidence inadmissible. All available records of a laboratory in this case have been placed in evidence, and every person having any knowledge of material matters about the test has testified. Any discrepancy in their testimony or concerning the adequacy of the records goes to the weight to be accorded the evidence rather than to its admissibility.

From an examination of the entire record in this case, we think that plaintiff proved by a preponderance of the evidence and by the highest degree of proof available to her, that the blood sample analyzed was taken from decedent and was in an unchanged condition when analyzed. Evidence of the results of the test should therefore have been admitted into evidence.

Since the proof offered was strong evidence on the material issue of intoxication, its rejection was clearly prejudicial and constitutes reversible error.

By our decision in this case we do not intend to imply that the cited decisions of other courts in criminal matters are wrong on their facts, but point out that a different degree of proof is required in civil cases. Whether the burden is met in a specific case, must necessarily depend on the facts involved.

The contention of the plaintiff that the trial court erred in refusing to give plaintiff's tendered instruction No. 8, which instruction seeks to define intoxication under the Liquor Control Act, will not be passed upon by this court. A new trial of this cause will be necessary, and the plaintiff's tendered instruction is different from instruction 150.15, Ill. Pattern Jury Instructions, Civil, which defines "intoxicated." (IPI No. 150.15) Upon a new trial, instructions will be given in accordance with Supreme Court Rule 25—1.

The judgment of the Appellate Court is reversed and the cause remanded to the circuit court in Rock Island County for a new trial.

*Reversed and remanded.*