WILLIAM CHEEK, Plaintiff-Appellee, *v.* AVCO LYCOMING DIVISION *et al.*, Defendants.—(WILLIAM FIELDS, Defendant-Appellant.)

Fifth District    No. 76-294

Opinion filed December 23, 1977.

Hoagland, Maucker, Bernard & Almeter, of Alton (Donald L. Smith and Gerald R. Walters, of counsel), for appellant.

Wendell Durr, of Edwardsville, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant William Fields, an aircraft mechanic, seeks reversal of a $8,100 judgment rendered against him after a bench trial in the Circuit

Court of Madison County. The action was brought to recover damages resulting from the alleged negligence of Fields in overhauling the engine in an airplane owned by the plaintiff, William Cheek. Judgment was entered for the defendant Sisk Aviation Activities, Inc., on issues of negligence, implied and express warranties. Judgment was entered in favor of defendant Fields on the issues of express and implied warranties. Defendants Avco Lycoming Division, Ranger Insurance Co. and E. J. Miller & Co., Inc., were dismissed before trial.

Sometime in June 1970, Sisk Aviation Activities, Inc., purchased the airplane. S. W. Sisk said that his agreement with the then owners was that they would furnish the plane with a "majored" engine, the cost of which was paid by Sisk and deducted from the purchase price. Fields performed the engine overhaul.

On October 24, 1970, Cheek purchased the plane from Sisk Aviation. While on a business flight on May 20, 1971, Cheek experienced violent vibrations which forced him to land, uninjured, at an airstrip in Booneville, Missouri.

Soon after the incident, Cheek engaged two mechanics from Thunderbird Aviation to inspect the plane which was still in Booneville. Then Sisk, as a courtesy to Cheek, sent Richard Dickman of Skyways Aviation to inspect the plane. Upon Dickman's report that the engine needed to be torn down, Cheek requested that it be removed to Sisk Aviation, which was done. Cheek accepted Sisk's recommendation of a shop to overhaul the engine, and the engine was shipped to Aircraft Engines & Service, Inc., in Bethany, Oklahoma.

The engine remained in Oklahoma for over five months. It was then returned to Cheek, disassembled, in a crate which he took, unopened, to the Staples Aircraft Repair Shop. John Staples testified that upon opening the crate he found missing parts, damaged parts, good parts and parts that had been partially repaired.

The allegations of negligence which the trial court apparently thought proved were that Fields installed a shorter, thinner-walled piston pin in one cylinder of the engine and that this mistake caused the damage to the airplane. This conclusion was presumably based on the testimony of several witnesses, including Fields, that the piston pin in plaintiff's Exhibit 5, the connecting rod assembly, was improper.

Of the engine parts from the crate which Cheek introduced as exhibits at trial, none contained a serial number which would have identified the engine, and thus the airplane, from which they were taken. While the parts were at Staples Aviation Repair, a Federal Aviation Administration representative attached to a connecting rod and piston pin a tag purporting to label these parts with the identification numbers of Cheek's plane.

The primary issues raised by defendant on appeal are whether the

engine parts from the crate and the FAA tag were properly admitted into evidence. We think they were not. Additionally, defendant contends that there is insufficient evidence to support a judgment against Fields and that the trial was not completed.

■■■ In order to admit physical evidence, or testimony regarding it, the plaintiff must show that it is the same object and that it is in the same condition as at the time of the incident. (*Van Winkle v. Firestone Tire & Rubber Co.*, 117 Ill. App. 2d 324, 331, 253 N.E.2d 588, 592 (1969).) In a civil case, plaintiff need not preclude every possibility of doubt, but every person having material knowledge of the object and its condition must testify. (*Woolley v. Hafner's Wagon Wheel, Inc.*, 22 Ill. 2d 413, 419, 176 N.E.2d 757, 760 (1960).) Only if all such persons have testified does a discrepancy in testimony go to the weight to be accorded the evidence rather than its admissibility. (*Woolley v. Hafner's Wagon Wheel, Inc.*, 22 Ill. 2d 413, 419, 176 N.E.2d 757, 760 (1960).) In the present case, the engine parts were inadmissible because plaintiff failed to lay the necessary foundation. Not only had the engine been out of Cheek's control since the forced landing, but several mechanics, none of whom testified, had inspected it and those in Oklahoma tore down the engine and actually began to repair certain parts. By the time Staples received the disassembled engine in a crate, visibly in a substantially altered condition, it was questionable whether all of the parts even came from the same engine.

Furthermore, the error extends to the admission of testimony regarding inspection of the engine parts at trial. "Testimony based on an inspection after the event is not competent unless evidence is also introduced to show that the conditions inspected had remained unchanged in the interim." *La Salle National Bank v. Feldman*, 78 Ill. App. 2d 363, 372, 223 N.E.2d 180, 185 (1966); *Champion v. Knasiak*, 25 Ill. App. 3d 192, 200-01, 323 N.E.2d 62, 69-70 (1974).

Plaintiff contends that he must show only that the parts in question, not the entire engine, are in the same condition at trial and he relies on *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.*, 21 Ill. App. 3d 510, 316 N.E.2d 255 (1974), *aff'd on other grounds*, 62 Ill. 2d 77, 338 N.E.2d 857 (1975). We believe plaintiff's reliance is misplaced. In *Liberty Mutual* the defendant manufactured a relief valve which allegedly failed in a hydraulic work platform. The relief valve was inspected immediately after the incident and then the whole platform remained, covered, in a parking lot for five years. The appellate court held that the trial court properly admitted testimony regarding a subsequent inspection and tests by engineers after five years. The court based its holding on the facts that the hydraulic pump which contained the relief valve had not been dismantled at the initial inspection, was visually unchanged, was immersed in its

original oil supply in the casing, and was under an unbroken seal originally placed there by defendant. (21 Ill. App. 3d 510, 518, 316 N.E.2d 255, 261.) Obviously the facts in the instant case, with regard to either the engine itself or its component parts, do not parallel those in *Liberty Mutual.*

■■ Similar considerations apply with regard to the FAA tag. *People v. Ransom*, 65 Ill. 2d 339, 357 N.E.2d 1164 (1976), holds that testimony may be given about a tag only where there is a foundation that the person who had seen the tag earlier could independently identify the tagged object. Thus in *Ransom* a physician who performed a post-mortem on the body of a person unknown to him was permitted to testify that on a tag affixed to the body was written "Ernest Tiller" *only* because a funeral home manager had previously seen the tagged body and recognized it as that of Ernest Tiller. Since the FAA tag in the instant case was affixed to an engine part that came from the crate, after the engine was substantially and unquestionably altered, the tag is inadmissible to show the truth of the statement it contained. The only purpose for which the tag might have been admitted is to show that the tagged part at trial was the same part the FAA representative saw at Staples' repair. The tag was admitted without limitation, however, and it was undisputed at trial that the tagged part came from the crate. The chain was broken in Oklahoma. It was prejudicial, even in a bench trial, to receive a hearsay memorandum from an agency of the Federal Government the content of which was meaningless at best.

■■ Plaintiff asserts that the tag is within the business records exception to the hearsay rule. This contention is without merit. The FAA representative did not testify. Thus, the necessary foundation is lacking regarding the routine nature of the document and how the representative ascertained that the part he tagged came from Cheek's engine.

■■ Absent these exhibits and the testimony stemming from them, the remaining question is whether the evidence is sufficient to support a judgment of negligence against Fields. The standard for determining the presence or absence of negligence, as a matter of law, is whether all of the evidence, when viewed in its aspect most favorable to Cheek, so overwhelmingly favors Fields that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967).) In the present case, the only evidence of Fields' performance in overhauling the engine came from his own testimony when he was called by plaintiff under section 60 of the Illinois Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60). Fields testified that he checked all of the parts for cracks, measured the piston pins with a micrometer, found them to be within the accepted tolerance, and replaced them in the engine. The engine was then tested, both on the ground and in the air, and operated satisfactorily for 187 hours before malfunctioning. There was no

other evidence regarding Fields' performance of the overhaul. Plaintiff is bound by Fields' uncontradicted and unrebutted testimony. (*Estell v. Barringer*, 3 Ill. App. 3d 455, 460, 278 N.E.2d 424, 428 (1972); *Dominick v. Behrends*, 130 Ill. App. 3d 726, 727, 264 N.E.2d 297, 298 (1970).) Thus under the *Pedrick* standard, the judgment must be reversed.

This reversal renders it unnecessary to consider appellant's contention that the trial was not completed.

The judgment of the Circuit Court of Madison County is reversed.

Reversed.

CARTER and JONES, JJ., concur.