HAROLD J. KNOTT, Adm'r of the Estate of Loraine M. Knott, Deceased, Plaintiff-Appellant, *v.* CHICAGO & EASTERN ILLINOIS RAILROAD COMPANY *et al.*, Defendants-Appellees.

Fifth District No. 78-365

Opinion filed June 28, 1979.

JONES, J., dissenting.

Joseph L. Fribley, of Fribley, Fribley & Proffitt, of Pana, for appellant.

August L. Fowler, of Fowler & Novick, of Marion, for appellees.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiff, Harold J. Knott, administrator of the estate of Loraine Knott, deceased, brought this wrongful death action in the circuit court of Johnson County to recover for damages sustained by reason of his wife's death allegedly caused by the negligent operation of defendant's train. In

addition to the defendant Chicago & Eastern Illinois Railroad Company, plaintiff joined Byron L. Lowery and John R. Evans, engineer and brakeman of the train in question. Evans was dismissed from the suit and is not a party in this appeal. At the close of plaintiff's evidence, the trial court granted the remaining defendants' motions for a directed verdict and entered judgment for the defendants ruling that plaintiff's decedent was contributorily negligent as a matter of law.

The accident in question occurred on January 14, 1974, at approximately 12:30 p.m. at the grade crossing of the Cypress-Dongola Road and defendant's tracks located in Johnson County. Decedent's automobile, a 1969 Oldsmobile Delta 88, was traveling east on the Cypress-Dongola Road and was struck near the center of the driver's side by defendant's southbound train. Mrs. Knott was killed instantaneously.

Donald Dilback, a delivery driver for United Parcel Service, arrived upon the scene of the accident shortly after it occurred. He described the weather conditions that day as "very foggy * * * the fog right at the crossing was worse than in other areas * * *." He described the condition of the grade crossing as "pitiful." Dilback did not see a train when he stopped to assist the decedent, nor did he see a train upon returning from the Lytle Diner where he had gone to call an ambulance.

Ruby Lytle operated a diner located on the north side of the Cypress-Dongola Road, within 150 feet of the defendant's tracks. She stated: "It was very foggy, visibility was completely zero." Describing the condition of the grade crossing, she stated: "It was very rough * * * you have to come almost to a total stop." Lytle testified that she did not hear a train whistle or bell.

Forest Campbell was eating lunch at the Lytle Diner on the day the accident occurred. He testified that it was "very foggy" and that the grade crossing was "very rough." He heard the train coming through the area and the noise of the cars, but did not hear a whistle, bell or horn.

Lottie Parker, who resides north of the Lytle Diner, within 200 feet of the defendant's tracks, testified that she was washing clothes in the utility room in the back of her house on the day of the accident. The Parker house is situated so that the back of the house faces defendant's tracks. On direct examination she testified:

> "I was aware of the train going in back of the house and then I heard him put the air—throwed [sic] the air on is the way I put it, and all the cars abumping together."

She heard no whistle, bell, or horn. She described the weather conditions as "very, very foggy" and the condition of the grade crossing as "very rough," noting "you had to come almost to a complete stop to go across it."

Plaintiff, Harold J. Knott, was hunting with a friend approximately

one-half mile west of the grade crossing when the accident occurred. He saw his wife as she passed by on the Cypress-Dongola Road and said that she was traveling approximately 10 to 15 miles per hour. He described the weather conditions as "very foggy" and the grade crossing as "very rough." Knott testified that his wife's car was in excellent condition. He acknowledged his wife's familiarity with the crossing in question and stated that she had traveled over the particular crossing many times, at least 60 times during the previous year. Knott testified: "I heard a train toot just one little toot, maybe a second or a half of a second, but nothing more." In concluding, he stated: "If the train whistles like it's supposed to whistle, I hear it every time it goes by."

Byron L. Lowery, engineer of the train, was called by plaintiff under section 60 of the Civil Practice Act. He testified that the train consisting of an engine, 10 cars and a caboose, was traveling approximately 30 miles per hour or 44 feet per second and that it would take almost 1000 feet to stop such a train traveling at that speed. Upon seeing a sounding post located 80 rods north of the crossing, Lowery testified that he rang the train's bell and sounded the whistle. Some 200 to 300 feet north of the crossing Lowery applied the emergency brake when the brakeman exclaimed: "There's a car coming up fast, put it in emergency." After colliding with decedent's automobile, the train traveled approximately 800 feet south of the crossing. Lowery described the weather conditions as "foggy" with a visibility of "about 500 feet" and the condition of the track bed at the crossing as "very good."

■■ Under the familiar *Pedrick* standard, the trial court's ruling in this case is correct only if all the evidence, when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favors the defendants that no finding of the decedent's freedom from contributory negligence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Defendant claims that decedent was contributorily negligent as a matter of law in failing to see the train and in failing to avoid the accident. When recently addressing this same issue, our supreme court in *National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 383 N.E.2d 919, noted:

> "[I]n approaching [railroad crossings] a person is required to diligently use the senses of sight and hearing and to exercise a degree of care commensurate with the known danger. [Citations.] * * * However, the law readily acknowleges that if a crossing is obstructed, a person, diligently using the senses of sight and hearing and exercising the ordinary care expected under the circumstances, might be excused for failing to perceive that the train was approaching. [Citation.] A person is not required to come

to a complete stop before traversing an obstructed crossing, nor is he required to keep a continuous lookout in the direction from which a train may be coming. [Citations.]" 73 Ill. 2d 160, 169.

An Indiana case, *New York Central R.R. Co. v. Kirk* (1937), 104 Ind. App. 501, 11 N.E.2d 537, is strikingly similar to this case. In that case the decedent was killed when his automobile was struck by a passenger train. There was evidence that a dense fog obscured the decedent's vision and that the statutory train signals were not given. The jury returned a verdict for the plaintiff and the railroad appealed, contending, *inter alia*, that decedent was contributorily negligent as a matter of law. The Indiana court stated:

"There is evidence from which the jury was warranted in concluding, as the verdict indicates, that the statutory signals as required by section 55-1243, supra, were not given; that there was a fog which obscured the vision of the appellee's decedent as he approached the intersection; that because of such fog, had decedent looked to the east, the direction from which the train was approaching, he would have been unable to see the train, and because of the lack of signals, as above shown, even if he listened, he could not have heard (as by statute contemplated) the train's approach, hence decedent was not guilty of contributory negligence and the negligence of the New York Central Railroad Company in failing to give the signals was the proximate cause of decedent's death." (104 Ind. App. 501, 503, 11 N.E.2d 537, 538.)

Similarly, when the facts of this case are viewed in their aspect most favorable to the plaintiff, it is clear that the jury could have found that plaintiff's decedent was not contributorily negligent. There was a dense fog on the day of the accident which could have obscured decedent's vision; there was evidence that the crossing was very rough, requiring the exercise of extreme caution in traversing the grade; and there was testimony that no bell, whistle, or horn sounded before the accident occurred.

"Generally, in those cases in which a crossing is obscured, whether a plaintiff exercised due care and whether the obstruction prevented the plaintiff from perceiving an oncoming train are questions of fact for the jury and not matters of law which would require the court to intervene." (*National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 169.)

The logic of the Illinois Supreme Court in *Chicago & Northwestern Ry. Co. v. Hansen* (1897), 166 Ill. 623, 46 N.E. 1071, merits repeating here:

"The traveler may not be at fault in failing to look or listen if misled without his fault, or the view may be obstructed by objects or by

darkness, * * *. It seems to us impossible that there should be a rule of law as to what particular thing a person is bound to do for his protection in the diversity of cases that constantly arise, and the question what a reasonably prudent person would do for his own safety under like circumstances must be left to the jury as one of fact. [Citations.]" 166 Ill. 623, 628.

Defendant contends that decedent had a duty to stop at the grade crossing. Section 11—1201 of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 11—1201) provides:

"[A] driver shall stop within 50 feet but not less than 15 feet from the nearest rail of the railroad and shall not proceed until he can do so safely. * * * when:

* * *

3. A railroad train approaching a highway crossing emits a warning signal and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard;

4. An approaching railroad train is plainly visible and is in hazardous proximity to such crossing;

5. A railroad train is approaching so closely that an immediate hazard is created."

As we have noted previously, there was sufficient evidence introduced at trial upon which the jury could have concluded that the train did not emit a warning signal, that it was not plainly visible, and that plaintiff's decedent did not know the train created an immediate hazard to her well-being. Accordingly, this contention is without merit.

■■■ Finally defendant contends that the testimony of the train engineer, Byron L. Lowery, is binding on the plaintiff as to evidence of decedent's due care. Called as an adverse witness under section 60 of the Civil Practice Act, Lowery quoted the brakeman as stating: "There is a car coming up fast, put it in emergency." A party is bound by the testimony of an adverse witness only to the extent it stands uncontradicted and unrebutted. (*Peters v. Hervy* (1973), 11 Ill. App. 3d 715, 297 N.E.2d 363.) Here the plaintiff introduced circumstantial evidence that contradicted Lowery's testimony. For example, there was evidence of decedent's speed approximately one-half mile west of the crossing, decedent's familiarity with the crossing in question, and the extreme caution necessary to traverse the crossing. Due care and caution for one's own safety need not be established by direct proof; it may be shown by circumstantial evidence, or may be inferred by the jury from circumstances appearing in the proof. (*Randolph v. New York Central R.R. Co.* (1948), 334 Ill. App. 268, 79 N.E.2d 301.) In view of this contradictory evidence, we do not believe that plaintiff is bound by the remarks of Lowery.

Viewing all of the evidence in its light most favorable to the plaintiff, it is clear that there was evidence upon which a jury could find that the plaintiff was not contributorily negligent. Thus, we conclude that the trial court erred in directing a verdict for the defendant in this cause.

For the foregoing reasons, the judgment of the circuit court of Johnson County is reversed and this cause is remanded for a new trial.

Reversed and remanded.

KARNS, J., concurs.

Mr. JUSTICE JONES, dissenting:
I respectfully dissent.

Three witnesses for the plaintiff, Ruby Lytle, Forest Campbell and Lottie Parker, testified that they did not *hear* the train whistle blow or its bell ring. They did not testify that the whistle did not blow and the bell did not ring. (Campbell testified that the whistle did not blow and the bell did not ring but he was squarely impeached by his deposition upon cross-examination and was never rehabilitated.) The cross-examiner was careful in having these witnesses differentiate between "the whistle didn't blow and the bell didn't ring," and "I didn't hear the whistle blow or the bell ring." Thus, plaintiff failed to prove by these witnesses that the whistle did not blow and the bell did not ring.

To the contrary, the plaintiff himself testified that he heard the whistle blow when he was approximately one-half mile distant from the crossing. In addition to this the plaintiff called defendant Byron Lowery, the engineer, as a witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60). Lowery testified that he both blew the whistle and rang the bell at the appropriate whistle post and in the directed manner. Not only is the engineer's testimony in this regard not contradicted, it is corroborated by the testimony of the plaintiff. Accordingly, the section 60 testimony of the engineer is binding on the plaintiff. *Kapraun v. Kapraun* (1957), 12 Ill. 2d 348, 146 N.E.2d 7; *Chance v. Kinsella* (1923), 310 Ill. 515, 142 N.E. 194; *Cheek v. Avco Lycoming Division* (1977), 56 Ill. App. 3d 217, 371 N.E.2d 994.

The majority states that there is circumstantial evidence which contradicts Lowery's testimony. They cite decedent's (slow) speed one-half mile from the crossing, her familiarity with the crossing and the extreme caution necessary to traverse the crossing. This evidence is not contradictory of the testimony of Lowery but a convolution of evidence of plaintiff's decedent's contributory negligence.

The majority rests its position upon the assertion that the crossing was obscured as a result of the fog, citing *National Bank v. Norfolk & Western*

*Ry. Co.* That case is not in point for the obstructions to the crossing there involved consisted of trees, shrubbery and a house. In this case there were no tangible obstructions to the crossing; rather, all observation was limited by a generally prevailing fog. The railroad crossing was neither more nor less obscured than any other tangible object in the vicinity.

Despite the foggy condition prevalent the train brakeman (present in the cab with the engineer) was able to see plaintiff's decedent's automobile approaching the crossing in time, and from a sufficient distance, to warn the engineer who then applied the emergency brake of the train when it was 200 feet distant from the crossing. Had she been in the exercise of ordinary care on the occasion, plaintiff's decedent would have been able to see the approaching train as easily as the brakeman saw her approaching auto. Plaintiff's decedent was certainly aware of the fog and was accordingly charged with the duty to exercise the extra degree of caution required.

Under the facts of this case the jury could not have concluded that no warning signals were given from the train or that plaintiff's decedent could not have seen and heard the approaching train in ample time to stop before she reached the crossing. Accordingly, the trial court was correct in directing a verdict for the defendants at the close of plaintiff's evidence because plaintiff's decedent was guilty of contributory negligence.

I would affirm.