CLARENCE HERRICKS, Defendant in Error, *vs.* THE CHI-
CAGO AND EASTERN ILLINOIS RAILROAD COMPANY,
Plaintiff in Error.

*Opinion filed February 20, 1913.*

1. MASTER AND SERVANT—*master is not liable for a defect in a simple, ordinary tool.* The master is not liable for a defect in a simple, ordinary tool procured and provided in the ordinary way; and this rule includes all common tools, such as axes, hammers, wrenches, hoes, spades and ladders.

2. SAME—*the master is not bound to inspect simple tools.* The master is not bound to inspect simple tools furnished to his servant to discover whether defects appear in the course of their use; but an exception exists in cases where the master has manufactured the tool under such circumstances that there is no equality of knowledge between him and the servant.

3. SAME—*when the master is liable for improper repair of set-hammer.* Where the face of a set-hammer used by a blacksmith and his helper in a railroad shop has become battered, and there is only one proper method of repair but such fact is not known to the helper, the making of the repair by the blacksmith in an improper and unsafe manner will render the railroad company liable for an injury to the helper resulting therefrom.

4. SAME—*when question whether set-hammer was properly repaired should go to jury.* In an action by a blacksmith's helper in a railroad shop to recover from the railroad company for an injury inflicted by a piece of steel breaking from a set-hammer which the blacksmith had recently repaired, it is proper to submit to the jury the question whether the hammer was properly repaired, where the evidence shows the manner in which such repair should have been made but the evidence of the plaintiff and the blacksmith is in conflict as to whether the repair was made in that manner.

5. TRIAL—*when court should not re-open case for further evidence.* While the re-opening of a case to enable the plaintiff to introduce further evidence is largely a matter within the trial court's discretion and is proper where the evidence was not previously accessible or was inadvertently overlooked, yet the court should not re-open the case if the effect is to aid the trickery of counsel or to promote or countenance unfairness in the conduct of the trial.

6. SAME—*when court should sustain an objection to argument.* In an action by a servant to recover damages for the loss of an eye, it is error to permit the plaintiff's attorney to carry on a line

of argument to the effect that the jury could consider that the plaintiff might lose his other eye and thus go through life totally blind, where there is no evidence in the case that such a result might probably, or even possibly, follow the injury.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

H. M. STEELY, and H. M. STEELY, JR., for plaintiff in error.

ACTON & ACTON, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The defendant in error, Clarence Herricks, suing by his next friend, recovered a judgment in the circuit court of Vermilion county against the plaintiff in error, the Chicago and Eastern Illinois Railroad Company, for damages resulting from the loss of an eye while employed by plaintiff in error as a helper for a blacksmith. The Appellate Court for the Third District affirmed the judgment, and we granted a writ of *certiorari* for the purpose of reviewing the record.

The defendant asked the court to direct a verdict of not guilty, which the court refused to do, and the refusal raises the question whether there was any evidence fairly tending to prove the cause of action alleged, which was, that the set-hammer used by the plaintiff and the blacksmith with whom he was a helper, which had become battered by use, had been repaired by the defendant in a negligent manner; and that as a consequence of the defendant's negligence a piece of the hammer flew off when it was struck by the plaintiff and caused the injury.

A set-hammer has a face on each end and is used to square angles by setting it on iron at the angle and striking it with a sledge. The set-hammer in question had gradually become battered in use, so that the edges of the upper face had curled over and formed burrs around the top, a quarter of an inch deep or thereabouts. The blacksmiths in the shop repaired their own tools, and John J. Higgins, the blacksmith with whom the plaintiff worked, repaired the hammer. There was no controversy concerning the method of making the repair necessary to make the hammer safe for use. Eleven blacksmiths of considerable experience were examined as witnesses,—four by the plaintiff and seven by the defendant. While they differed somewhat as to minor details, they agreed that it was necessary to cut off the hammer below where the burrs had formed, because the broken and separated parts of the steel could not be welded. The only material controversy of fact was whether the hammer had been cut off to a square face below where the burrs had formed, and as to that fact there were only two witnesses, and they contradicted each other. The plaintiff testified that Higgins heated the hammer and placed it on the anvil; that the plaintiff mashed the burrs down with a hammer and then Higgins took it over to the big steam hammer and mashed it down a little more and then smoothed it up, and that nothing more was done and the burrs were not cut off. Higgins, who had been a blacksmith for twenty-seven years, testified that he heated the hammer and put it on the anvil; that the plaintiff did the striking and dressed it down; that Higgins then cut off the hammer below the burrs and heated it again and rounded the corners off, and that he did not take it to the big steam hammer. According to his testimony the hammer was repaired in a proper manner so as to make it safe for use by first hammering the burrs down and then cutting the face off back far enough to cut off the burrs, and the theory of the defendant was that the small

piece of steel was caused to fly off by a glancing blow by
the plaintiff. The hammer was repaired about seven-thirty
in the morning and was used until eleven forty-five, when
the accident happened. There was no direct evidence for
the defendant as to the kind of blow that was struck at
that time, but the evidence was that a set-hammer must
be struck with a fair, square blow of the sledge, and that
the plaintiff was in the habit of striking glancing blows
and had been frequently cautioned not to strike in that
way. He testified that the blow at this time was square
and not glancing.

The ground upon which it is insisted that the court
erred in refusing to direct a verdict is that the hammer
was a simple tool, and as to such tools the master assumes
no liability. It is the law that the master is not liable for
a defect in a simple, ordinary tool procured and provided
in the ordinary way. It is one of the essential facts to be
proved by a servant seeking to recover on account of a
defective tool or appliance, that he did not know of the
defect and had not equal means with the master of know-
ing of it; (*Goldie* v. *Werner,* 151 Ill. 551;) and as to a
simple tool the opportunities of the servant for knowing of
the defect are at least equal to those of the master. If
the tool is procured by the master from another and there
is a latent defect, neither one would know of it and the
master would not be liable, and if there is a patent defect
the servant has as good an opportunity to know of its ex-
istence as the master. This rule includes all common tools
and appliances, such as hammers, wrenches, axes, hoes,
spades and ladders. (*Webster Manf. Co.* v. *Nisbett,* 205
Ill. 273; *Lynn* v. *Glucose Sugar Refining Co.* 128 Iowa,
501; *Marsh* v. *Chickering,* 101 N. Y. 396; *Stork* v. *Stol-
per Cooperage Co.* 127 Wis. 318.) Neither is the master
bound to inspect simple tools furnished to his servant to
discover whether defects appear in the course of their use.
(*Dompier* v. *Lewis,* 131 Mich. 144; *Wachsmuth* v. *Shaw*

*Electric Crane Co.* 118 id. 275; *Meyer* v. *Ladewig,* 110 N. W. Rep. [Wis.] 419; *Cregan* v. *Marston,* 126 N. Y. 568; *Koschman* v. *Ash,* 98 Minn. 312.) If any defect should appear in the course of use of such tool, the servant using it would have a better opportunity to discover it than the master. An exception, however, has been recognized in cases where the master has manufactured the tool under such circumstances that there is no equality of knowledge between him and his servant. (*VantHul* v. *Great Northern Railroad Co.* 90 Minn. 329; *Johnson* v. *Missouri Pacific Railroad Co.* 96 Mo. 340.) In such a case the servant may say that he not only did not know but did not have equal means with the master of knowing of the defect. In this case the plaintiff was a helper and was nineteen years old. He had worked in that capacity for about a year, which was long enough to become proficient as a helper, but he was not a blacksmith and had not the necessary knowledge to understand how the hammer should be repaired. The question whether the hammer was repaired as testified to by plaintiff or as Higgins testified that it was, was proper to be submitted to the jury, and the court did not err in refusing to direct a verdict. Whether the preponderance of the evidence was in favor of the plaintiff or the defendant was not involved in the motion, but was a question to be considered by the court on a motion for a new trial, and by the Appellate Court, where the controversy in that respect ends by virtue of the statute.

The result of the suit depended upon the credibility of the plaintiff on the one hand and of the blacksmith, Higgins, on the other, and it was essential to a fair trial and the attainment of justice that their testimony should be submitted to the jury free from improper influences calculated to affect their conclusion. After the evidence had been closed the plaintiff was permitted to re-open the case and offer in evidence the piece of steel which had been taken from the plaintiff's eye. In the course of the trial

the court had asked the attorney for the plaintiff, during the examination of his witnesses, whether he had the piece of steel, and he answered that he had. It had been in the court and in the pocket of plaintiff's attorney during all of the trial but had not been exhibited or offered in evidence. The attorney for the plaintiff, in his argument to the jury, said that he had his reasons for keeping the piece of steel in his pocket until after the witnesses for the defendant had testified; that he knew well enough if the piece of steel was offered in evidence and the witnesses saw it before they testified their testimony would have exactly fitted it; that they were working for the defendant and wanting to hold their jobs, and that their testimony would have changed to fit in with the piece of steel. The ruling of the court necessitated recalling the witnesses for the defendant to show that in their opinion the piece of steel was such as would be produced by a glancing blow of the sledge. The order in which evidence shall be produced is in the discretion of the court, and a liberal exercise of the discretion has always been approved where evidence was not accessible or was inadvertently overlooked, but the discretion should never be exercised in aid of trickery or to promote or countenance unfairness in the conduct of the trial. As to the two witnesses contradicting each other, one had a direct, immediate and important interest in the result of the trial, and the other was a blacksmith working for ordinary wages and who would be exposed to danger if the hammer was not repaired as it ought to have been. He was holding the hammer at the time of the accident and was nearer to it than the plaintiff, and these facts were to be considered on the question whether he would be likely to make the repair in a way that would make the hammer unsafe for himself. There is no apparent justification for the conduct of the attorney in keeping the piece of steel in his pocket on account of any reason which he alleged and offering it later, and it was an abuse of discretion on

the part of the court to permit the case to be re-opened for that purpose.

During the argument the attorney for the plaintiff called attention to the *ad damnum* of the declaration and, upon objection withdrew the remark, but, continuing his argument as to the amount of damages, said that no one knew what day, through sympathy or sympathetic nerves, the other eye might also be injured, and he appealed to the jury to consider what it would be for a man to go through life blind. Objection being made that there was no proof of any probability that the other eye would be affected, the court merely said to the attorney, "Keep on safe ground," whereupon the attorney said that it was a matter entirely within the judgment of the jury. The plaintiff had no right to recover for anything not reasonably certain to occur in the future, and there was no evidence that the loss of one eye might probably, or even possibly, result in the loss of the other. The court erred in not sustaining the objection and making the jury understand that the argument was improper and that damages could not be allowed on the theory that the plaintiff might lose the other eye.

There were a number of instructions abstract in form and not applicable to the case. The jury were instructed that it is the duty of an employer to use reasonable care to provide tools that are reasonably safe for the purpose for which they are to be used, and that rule does not apply generally to a simple tool like a hammer. While the general instruction was not applicable to the case and should not have been given, perhaps it would not, alone, be ground for a reversal, since there was an instruction which fairly stated the ground of action and rested liability of the defendant upon negligent repair of the set-hammer and leaving it in a condition in which a piece of steel was liable to fly off. Other errors are material. There is nothing appearing in the record affecting the credibility of the blacksmith, and the jury might have believed him in preference

to the plaintiff if the question of credibility had been fairly submitted to them. We cannot say that they would not have done so, and as the defendant did not have a fair trial the judgment must be reversed.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*