THE PEOPLE *ex rel.* THE CITY OF LELAND GROVE, Plaintiff-Appellant, v. THE CITY OF SPRINGFIELD, Defendant-Appellee.

Fourth District No. 4—89—0440

Opinion filed February 15, 1990.

Douglas G. Brown, of Douglas G. Brown, P.C., of Springfield, for appellant.

James K. Zerkle and Douglas T. Wilcox, both of Office of Corporation Counsel, of Springfield, for appellee.

JUSTICE SPITZ delivered the opinion of the court:

This case began when relator, the City of Leland Grove, filed a complaint in *quo warranto* challenging the authority of the defendant City of Springfield to exercise jurisdiction over real estate which was the subject of conflicting annexation petitions. Previously, this court considered an appeal by Springfield from a summary judgment entered by the circuit court of Sangamon County. (*People ex rel. City of*

*Leland Grove v. City of Springfield* (1988), 166 Ill. App. 3d 943, 520 N.E.2d 1205.) In the earlier appeal, this court decided a substantial issue of material fact existed as to which of the annexation ordinances had priority and reversed and remanded the cause for further proceedings.

On remand, a bench trial was conducted, and after considering the evidence and arguments of counsel, the trial court entered an order in favor of defendant and against relator. From this order, Leland Grove appeals.

In the May 18, 1989, order, the trial court specifically found: (1) the petition requesting annexation by Springfield was signed on June 19 or 20, 1985; (2) all signatures were notarized by Carl Hoffee; (3) the petition contained the proper number of signatures; (4) at the time of signing, the individuals who signed the petition knew what they were signing; (5) the number of electors from the territory who signed the petition exceeded 51% of the electors; (6) the petition is valid in all respects; (7) the petition was filed in the office of the city clerk of Springfield on June 21, 1985; (8) notice was provided to the township and fire protection district pursuant to law; and (9) the annexation ordinance No. 722—7—85 adopted by Springfield on July 30, 1985, was proper and valid. A summary of the evidence and testimony which the trial court considered in arriving at these conclusions follows.

Hadley Pfeiffer, trustee of Woodside Township, testified he did not recall receiving a notice in June or July 1985 regarding property owned by Dr. John Donovan. Nor could Pfeiffer recognize his signature on the return receipt for a certified mailing showing delivery on July 13, 1985. He stated he did not know if it was his signature or whether his wife signed for it. Elizabeth Fox, widow of Carl Fox, a trustee of Woodside Township in 1985, testified she recognized her signature on a receipt for a piece of mail delivered to the Fox residence on July 13, 1985. Geraldine Sprause, a trustee of Woodside Township, testified she did not recall the notice as to the Donovan property, but she did recognize her signature on a return receipt for mail which indicated a delivery date of July 15, 1985. However, neither she nor Pfeiffer recollected signing an affidavit at the request of township attorney Randy Schick, although they each recognized their signatures thereon. Mrs. Fox recognized her husband's signature on a similar affidavit.

J. Randle Schick, attorney for Woodside Township, testified that in July 1985, the trustees of Woodside Township were Carl Fox, Walter Gross, Geraldine Sprause, and Hadley Pfeiffer. A notice of the

proposed annexation was in his file. At the bottom of the notice is the signature of Candice Trees, as city clerk, and her signature was notarized by Norma Graves on July 12, 1985. Carl Fox handed this notice to Schick in person. Schick also identified a similar notice addressed to Gross. He also identified the affidavits signed by each of the trustees and Donald Duffy, township road commissioner, and notarized by Carol Dewing, township clerk, or Charlotte Titus, a township employee. These affidavits were signed at the township hall, just before or during a regular meeting. Regular meetings are held on the first and third Tuesdays of the month. All but Pfeiffer's affidavit were signed on April 8, 1986, the first Tuesday in April, and Pfeiffer's was signed May 6, the first Tuesday in May. In each of the affidavits, the affiant stated the notice was received by affiant. Pfeiffer's affidavit indicated he received it on or about July 13, 1985, as did Fox, Gross, and Duffy. The affidavit of Sprause indicates receipt on or about July 27, 1985.

Duffy testified his return receipt was signed by Bill Davis, a township foreman and employee of the commissioner. He believes Davis went to the post office to pick up the letter and signed for it. He does not recall Davis delivering the letter to him. However, he did identify his signature on the affidavit. He also indicated that when Springfield annexes property, Woodside Township loses that territory from its tax roll as well as the road maintenance responsibilities. Anabelle Pfeiffer, wife of Hadley, testified she signed Hadley's name to the return receipt. Gross identified his signature on the return receipt for the notice and on the affidavit. He recalls receiving notice of annexation for the Donovan property in the summer of 1985.

Pat Doyle, president of the South Oak Knolls Fire Protection District, testified there is no change in fire protection coverage if property is annexed to Springfield. Springfield would continue to provide the services. He identified the notice of annexation he received from Springfield and his signature on an affidavit evidencing receipt and on the return receipt. The affidavit indicated receipt of the notice of annexation by him on or about July 13, 1985. At that time, the other members of the fire protection district board were Irwin Muncy and Joan Ridley. Muncy testified he was a trustee of the South Oak Knolls Fire Protection District, but does not recall receiving a notice of annexation for the Donovan property. His daughter Rachel signed the return receipt, and she was 15 years old at the time. He had no recollection of Rachel advising him that a certified letter was delivered. He admitted signing the affidavit indicating receipt of the notice on or about July 13, 1987. Jo Ridley testified she is also a trustee of South

Oak Knolls Fire Protection District, and she identified her signature on the return receipt for the delivery of notice of annexation. At the request of Rob Powers, attorney for the district, she signed an affidavit indicating receipt of the notice of annexation by her on or about July 13, 1985. However, at the time she testified she had no independent knowledge of receiving the notice.

Dr. John J. Donovan testified he is the owner of the subject property. He picked up the petition at the office of his attorney, Carl Hoffee, who had prepared it, and he then proceeded to contact the tenants on the 19th or 20th of June 1985. He knew the petition had to be in before June 21, 1985. He had seen a newspaper notice concerning an involuntary annexation of his property by Leland Grove and this prompted his action. He identified the signatures on the petition as including his and his wife's signatures. At the time he signed, he was a registered voter. His wife had been registered to vote in Springfield, but had not yet transferred her voter registration to that precinct. The other signatures on the petition are those of Donald Whitehead, Dennis Bogner and Michael Mayol. All were signed in Donovan's presence. Both he and Hoffee explained to Whitehead the reasons for the petition. Donovan does not believe Mayol was a registered voter at the time. Hoffee witnessed and notarized the signatures on the affidavit at the bottom of the petition. Mr. Buhlig rented and paid for an apartment on June 12, 1985, but did not move in until the first of July. Donovan signed that portion of the petition certifying that no other persons, firms, or corporations had any rights, title, or interest in the subject property. He also identified three certified copies of deeds conveying to Donovan the real estate subject to this suit on September 19, 1950.

Donovan admitted that in December 1987, he submitted plans for a subdivision to Leland Grove. He also submitted plans to Springfield. In March 1988, he wrote to Douglas Brown, attorney for Leland Grove, expressing his feelings the property should be in Leland Grove. He testified he wanted to get started on the subdivision, but was disappointed with the lack of response by Leland Grove. A copy of that letter was sent to Ted Schlitt, mayor of Leland Grove. As late as a month prior to the hearing he did consider deannexation from Springfield. However, at the hearing he stated he wanted the property to be in Springfield. On cross-examination, Leland Grove's attorney attempted to establish that other individuals who had not signed the petition were residing on the property, but Donovan denied this.

Fely Acuna testified that she, her husband, children, and her father lived on the Donovan property in the summer of 1985, but they

were not citizens of the United States at that time and were not registered to vote. Donald Wilson testified he and his wife Desiree and their minor son lived on the subject property in 1985, but he and his wife were not registered to vote.

Diane Matthiesen, Donovan's daughter and the office and apartment manager for Donovan Rentals, testified that in June and July 1985, the tenants living on the subject property were Mr. and Mrs. Donald Whitehead, Michael Mayol, Dennis Bogner, and the Acunas. Mr. and Mrs. Wilson lived in the trailer and were employed by the Donovans. She identified other persons who left at the end of May 1985, and mentioned Buhlig, who did not move in until July 1.

Michael R. Mayol testified he lived on the subject property in June and July 1985. He was not registered to vote in June 1985.

Donald Whitehead testified he and his wife Betty resided on the property in June and July 1985. He was a registered voter at that time, but she was not. He recognized his signature on the annexation petition, and he recalled talking to Donovan about it. He does not remember when the signing took place. He glanced through the petition. before signing it, but did not know whether the contents were true and did not know he had to sign under oath. He also stated it would not have made any difference. He also gave two statements to the Leland Grove police.

Dennis Bogner testified he was a tenant of Donovan in June or July 1985. He remembered Donovan coming around with a petition. He identified his signature on the petition. Donovan briefly explained why he was petitioning Springfield for annexation, and Bogner scanned the document before signing. He signed twice for Donovan. He was not a registered voter at that time. He does not recall being approached by Hoffee. He did not know if the contents were true, and he was not asked to sign under oath.

Attorney Carl Hoffee testified he prepared the petition for annexation in June 1985 at the request of Donovan after a notice appeared in the paper on June 12, 1985, referring to Leland Grove's passage of a resolution to annex the property on June 10, 1985. On Thursday, June 20, 1985, he went to Donovan's home to get the petition completed. Based on the review of an abstract and other documents, Hoffee opined that Donovan owned the property. After Donovan obtained some of the signatures on the petition, Hoffee followed up by going to the apartment to talk to the people who signed. He talked to Whitehead and Mayol. Bogner was not home on June 20. He explained to Whitehead and Mayol that the signatures had to be under oath and that he was there to obtain their signatures on the acknowledgment

on the petition. Whitehead and Mayol signed the acknowledgment in Hoffee's presence. He recognized the signatures of the Donovans. He located Bogner the next day, June 21. Hoffee had a brief conversation with Bogner explaining he was there for the acknowledgment. Thereafter, Hoffee notarized all the signatures and took the petitions to the municipal building and filed it on June 21, 1985, at the city clerk's office.

On cross-examination, Hoffee explained that Whitehead and Mayol had signed the petition once for Donovan, but signed a second time in Hoffee's presence. He also had Dr. and Mrs. Donovan sign the acknowledgment section and owner's affidavit in his presence. Hoffee was also questioned about several other persons who may have lived on the property. He testified he does not remember them residing on the property, he does not remember why he had their names, but if they were residents, they must not have been registered voters. He knew that each of the persons signed the petition because they either signed it in front of him or, in Bogner's case, told him they signed it. He does not recall asking the petitioners whether they knew the statements contained in the petition were true. He did not have any of them raise their right hand and swear under oath before signing.

Norma Graves, Springfield city clerk, testified that in 1985 she was secretary to Commissioner Norris. The city clerk's office was under the jurisdiction of the department of accounts and finances, which was Norris' department. Occasionally she would work in the clerk's office. Graves testified as to the contents of the city clerk's file in this annexation, including the notice to the individual township trustees and members of the fire protection district and the return receipts therefor. She also testified the petition for annexation was date-stamped June 21, 1985, and the date indicates the date of filing. The initials thereon were those of Cindy Wheeler, an employee in the city clerk's office. Other employees in the city clerk's office were Susan Bracco and Candice Trees. Graves remembers helping Bracco prepare and send out notices concerning the annexation petition on June 21, 1985. She was there when the petition came in. She admitted the notices were sent out incorrectly once, requiring a second mailing. None of the notices were returned as being improperly addressed. At the bottom of the green cards a handwritten notation, "Donovan, Chatham Road" appears, indicating the subject of the mailing.

Bracco testified she started working in the city clerk's office on July 1, 1985. She was involved in sending out notices on July 12, 1985. After it was discovered the first set of notices was improperly

addressed, *i.e.*, to the wrong parties, a second set of notices was sent on July 12, 1985. Norma Graves notarized the documents that were sent out. Bracco also recognized Wheeler's initials on the annexation petition.

Candice D. Trees testified that in June 1985 she was Springfield city clerk. On the petition for annexation she noticed two date stamps, one indicating it was filed in the city clerk's office on June 21, 1985, and another indicating it was received in the legal department on June 21, 1985. She also recognized the initials of Wheeler on the petition. On cross-examination, she testified the manila file folder in which the documents were contained had a date of June 24, 1985. She assumes this is the date this file folder was prepared. She also testified to signing an affidavit indicating notice was served on fire protection districts and township trustees. The affidavit was notarized by Norma Graves on August 5, and, therefore, Trees believes she signed it on that date as well. This form was prepared by the legal department to be filed in the Sangamon County recorder of deeds' office.

Cynthia Cody, nee Wheeler, testified she is an employee of the city clerk's office. When annexation petitions were filed, she date-stamped them and sent copies to the city departments and the mayor's office. She recognized her initials on the Donovan annexation petition, indicated that it was date-stamped June 21, 1985, and the date had not been changed on the document. No one has asked her to change a date stamp and she would not do so if asked.

Richard T. Berning, chief public works engineer for Springfield, also testified. He stated the legal description of the subject property included in the notice is the same as the legal description which the parties stipulated was legally sufficient.

Ossie Langfelder, mayor of Springfield, testified that in 1985 he was commissioner of streets and public improvements. He did not know the property belonged to Donovan, but he believed Donovan was the owner. Nor did he know the total number of electors or what would constitute 51% of electors. He did not verify that notices were sent to the South Oak Knolls Fire Protection District trustees. On July 30, 1985, he asked the city council to accept the petition and the staff's recommendation. Earlier ordinances were also passed concerning this property on June 24 and 25, 1985. In the June 25 ordinance there is a clause indicating no part of the property is included within the corporate limits of any other municipality. There was also a provision reciting that notice had been given to certain public officials. At the time he voted for this ordinance, Langfelder had no personal

knowledge this was true. He also voted in favor of the June 24, 1985, ordinance, but had no personal knowledge the representations therein were true. Once an annexation petition was received, it was given to the city engineer, who then researched the project. The information was then disseminated to all departments. When each department had approved the petition and no objection came forward, the ordinance was prepared by legal counsel and presented to the city council. It was not unusual for developers to come in prior to filing to discuss annexation so as to ascertain the proper procedures. He identified the annexation summary sheet which was submitted to each of the departments and is initialled if the particular annexation is to be accepted. Langfelder does not recall any objection being made by Leland Grove or anyone else to this annexation.

John Patrick Ward, Sr., testified that in 1985 he was the commissioner of public health and safety. He voted for the July 30, 1985, annexation ordinance concerning the subject property, but he made no independent determination of whether the property was in the corporate limits of another municipality or how many electors resided on the property. He voted on the June 24, 1985, annexation ordinance and made no personal determination of the facts recited therein, stating that such determinations are staff functions. There was a procedure in place for evaluation of annexation petitions, and if there were an objection, the objection would have been brought to his attention. He received no objection from the fire protection district or the township, and he does not recall anyone at the meeting raising any questions about the ordinance or petition.

Frank Madonia was commissioner of public property in 1985. He was absent from the meeting when the June 24, 1985, ordinance came to a vote. He did vote on the July 30, 1985, ordinance. He did not determine how many registered voters resided on the property, or who owned it, or whether the persons signing the petition signed under oath. As did Ward and Langfelder, Madonia admits the annexation summary sheet does not state that the property is contiguous to Springfield, that it is not within the Leland Grove corporate limits, how many electors reside on the property, that Donovan is the record owner of the property, or that the property is located in the South Knolls Fire Protection District. However, Madonia testified there was a procedure in place to evaluate annexation petitions, and the staff recommendations therefrom were passed on to the city council and were used by the council members in deciding to vote for or against annexation. If there were any problems, those would be brought to the attention of the council members, but in this case there were no

objections, although he did recall Douglas G. Brown, trial counsel for Leland Grove in this matter, attending meetings in early 1985 on behalf of Lindsay Place and urging the adoption of a resolution other than the one actually adopted. Madonia did have personal knowledge of the subject property going back to 1966 when he was city engineer because the property is contiguous to Springfield, has been discussed in court cases over many years, has city water and service, and has been the subject of discussion not only of annexation, but also of subdivisions and a comprehensive plan for a network of streets in the urban area, which included Leland Grove.

Theodore J. Schlitt, Jr., mayor of Leland Grove, testified concerning the properties which were the subject of involuntary annexation by Leland Grove on June 22 and 24, 1985. Included in the June 22, 1985, annexation was the property which is the subject of this litigation. This occurred in a special meeting held at 3 p.m. For each of the ordinances there is a roll call vote showing who was absent and how each alderman in attendance at the meeting voted. Previously, on June 10, 1985, the Leland Grove city council passed and approved a resolution to annex the property. Since June 22, 1985, Leland Grove has provided municipal services to the property, including police protection and health- and safety-related matters. Leland Grove has also exercised municipal control over this property, and Donovan presented a subdivision plan to Leland Grove, which was approved. Fire protection is provided by the South Oak Knolls Fire Protection District through a contract with Springfield. He was not aware, as of June 22 and 24, 1985, that Donovan had previously filed a voluntary petition for annexation with Springfield, nor was he aware Donovan did not want his property annexed by Leland Grove.

Thereafter, Trees returned to the witness stand as a witness called by Leland Grove. As for the June 24, 1985, annexation ordinance, it was subsequently learned that one of the trustees of the South Oak Knolls Fire Protection District had resigned and was replaced by Doyle. At the end of June, she was advised by the legal department to notify Doyle in future proceedings. She does not remember if Supervisor Donald Casper of Woodside Township was sent notices, but if a notice was sent it would be reflected in the official file. She stated there were separate files for each ordinance and, if she signed the affidavit, notices were sent. She later recalled a conversation concerning there being no need to send notices for the June 25 ordinance because it was identical to the June 24, 1985, ordinance. After the conversation no notices were sent. The June 24 ordinance was adopted at an emergency council meeting and the regular meet-

ing was held June 25, 1985, at which the second ordinance was adopted.

James E. Norris was Springfield's commissioner of finance in 1985. He voted on an annexation ordinance concerning the subject property and assumed the representations contained in the ordinance were true. He had no personal knowledge concerning these matters.

Shirla M. Short was an administrative clerk in the Springfield city clerk's office in June 1985. She testified concerning the preparation of temporary file folders for annexation petitions. The tab label on petitioner's exhibit No. 1 states, "Donovan Annexation Petition, 6/24/85." To her knowledge she did not prepare this folder and has no personal knowledge of who did.

A stipulation was entered into by the parties concerning a number of individuals named on the election registration list who would testify, if called, that they had moved from the subject property prior to June 21, 1985. They also stipulated that the records of Donovan Rentals would show the receipt of no rent from some of the voters listed on the election records and that Matthiesen would testify she had personal knowledge that another did not reside there. The parties also stipulated that if Michael Houston, former mayor of Springfield, were called to testify, he would testify similarly to other counsel members concerning his knowledge of the representations contained in the ordinance; that he received from the staff no documentation to verify the representations, nor was that done in any annexation case while he was mayor for eight years; and that he received no objections to the ordinance or petition from Leland Grove, the fire protection district, township trustees, or anyone else.

After hearing arguments of counsel, the trial court allowed Springfield to reopen its case to present evidence of the roll call vote on the annexation ordinance. Norma Graves was recalled as a witness. She presented to the court the tape recording of the council meeting of July 30, 1985, at which the ordinance of annexation was passed. The council meeting was ordinarily recorded. She recognized the voices of the council members, and, in any event, their names are called as they voted. The ordinance is referred to by title. The tape was then played for the court. On cross-examination, Graves admitted she did not listen to the entire tape, and she did not know if there had been any changes to any portions of the tape.

The question of whether Leland Grove's annexation was first in time and, therefore, has priority was discussed in the earlier decision of this court. (*People ex rel. City of Leland Grove v. City of Springfield* (1988), 166 Ill. App. 3d 943, 520 N.E.2d 1205.) In our earlier

opinion, this court stated the rule that two annexation proceedings cannot be simultaneously pending concerning the same property. Therefore, the one initiated earliest has priority. This court further decided that Springfield's annexation proceeding began when Donovan *filed* his petition and the Leland Grove annexation proceeding began when the ordinance for involuntary annexation was *adopted*. The Leland Grove ordinances were adopted on June 22 and 24, 1985. The problem we noted in the earlier decision was there existed a question of fact as to whether Donovan filed his petition for voluntary annexation with Springfield on June 21 or June 24, 1985. However, there having now been a trial in this matter, that factual question has been resolved.

 ██ The trial court found Donovan filed his petition on June 21, 1985. The only evidence which arguably contradicts this is the June 24, 1985, date on the file folder and the testimony of Mayol, who said he believed he signed the Donovan petition on the evening of June 22, 1985. There was testimony the date on the file folder merely reflects the date the folder was made up and not the date the petition was filed. In addition, there was testimony by Donovan and Hoffee that Mayol signed the petition on June 20, 1985. The trial court is in a better position than is this court to assess credibility and weigh the testimony, and the trial court's finding has support in the evidence. As a result, the finding of the trial court that Donovan's petition was filed on June 21, 1985, is not against the manifest weight of the evidence, a contrary result not being clearly evident from a review of the record. See *Stone v. City of Arcola* (1989), 181 Ill. App. 3d 513, 536 N.E.2d 1329.

 Nevertheless, Leland Grove asks this court to reconsider the earlier decision in this matter in light of the decision of the First District Appellate Court that the publication notice, not the adoption of the involuntary annexation ordinance, initiates a section 7—1—13 proceeding. (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—13; *People ex rel. City of Prospect Heights v. Village of Arlington Heights* (1988), 171 Ill. App. 3d 766, 525 N.E.2d 970.) Leland Grove also notes that our earlier decision was followed by the Second District Appellate Court in *People ex rel. Village of Buffalo Grove v. Village of Long Grove* (1988), 173 Ill. App. 3d 946, 526 N.E.2d 670.

 A fair reading of the *Prospect Heights* case indicates the first district did not reject this court's earlier decision, but instead distinguished it. In *Prospect Heights*, the first district was attempting to determine the priority between the competing involuntary annexation proceedings under section 7—1—13 of the Illinois Municipal Code (Ill.

Rev. Stat. 1987, ch. 24, par. 7—1—13), unlike the case at bar. Therefore, there appears to be no reason to retreat from the earlier decision. The Springfield annexation proceeding has priority.

Leland Grove also asked us to consider whether Springfield met its burden of proving by affirmative evidence that strict compliance with the statutory requirements for annexation was had. Included in this determination is the review of whether: (1) Springfield made an inquiry to determine the validity of the information in the petition regarding annexation by Springfield; (2) the majority of electors signing said petition did so under oath; (3) the notices to the trustees of the fire protection district and township were defective; and (4) the Springfield ordinance was invalid because each elected official's vote was not recorded in writing in the legislative record and the trial court should not have granted Springfield's motion to reopen the proofs to allow Springfield to place into evidence a tape recording of the vote, for which there may not have been sufficient foundation.

■ As Leland Grove points out, annexation authority arises solely from the statute and the purported annexation becomes a nullity if the attempted annexation does not strictly comply with the statute. The burden of proving strict compliance with the statute rests with the party asserting the validity of the annexation, in this case Springfield. (*People ex rel. Village of Long Grove v. Village of Buffalo Grove* (1987), 160 Ill. App. 3d 455, 513 N.E.2d 408; *People ex rel. Marre v. Countryside Sanitary District* (1972), 5 Ill. App. 3d 747, 284 N.E.2d 308.) The statute authorizing annexation by Springfield states:

> "Any territory which is not within the corporate limits of any municipality but which is contiguous to a municipality at the time of annexation and which territory has no electors residing therein, or any such territory with electors residing therein, may be annexed to the municipality in the following manner: a written petition signed by the owners of record of all land within such territory and by at least 51% of the electors residing therein shall be filed with the municipal clerk. The petition shall request annexation and shall state that no electors reside therein or that at least 51% of such electors residing therein join in the petition, whichever shall be the case, and shall be under oath. The corporate authorities of the municipality to which annexation is sought shall then consider the question of the annexation of the described territory. A majority vote of the corporate authorities then holding office is required to annex. The vote shall be by 'yeas' and 'nays' entered on the legis-

lative records. A copy of the ordinance annexing the territory together with an accurate map of the annexed territory shall be recorded with the recorder and filed with the County Clerk within the county wherever the annexed territory is located." Ill. Rev. Stat. 1987, ch. 24, par. 7—1—8.

The first contention to be dealt with is that Springfield failed to meet its burden of proving that an inquiry was made to determine the validity of the representations made in the voluntary annexation petition. Springfield must demonstrate that, at the time the ordinance was passed, all the circumstances required by the statute existed. (*People ex rel. Cherry Valley Fire Protection District v. City of Rockford* (1970), 120 Ill. App. 2d 275, 256 N.E.2d 653.) The court in *Cherry Valley* indicated that even though the statutory annexation requirements, unlike the statutory disconnection procedure, do not require a judicial hearing, the city council, in effect, conducts a hearing to ascertain whether the facts presented in the annexation petition complied with the statutory prerequisites.

██ In this case, Springfield noticed up the ordinance for passage after the city staff had determined the petition complied with the statutory prerequisites and all the circumstances required by the statute existed. There were no objections. This is sufficient.

The fact each of the Springfield council members had little, if any, personal knowledge of the facts is irrelevant. They made their determination based on what they understood their employees and agents knew the facts to be at that time. Moreover, the trial court found that, at the time the ordinance was passed, the statutory prerequisites were fulfilled.

Leland Grove relies on the case of *People ex rel. Quisenberry v. Ellis* (1912), 253 Ill. 369, 97 N.E. 697, for the proposition that the Springfield city council's proceeding herein should have been conducted as a judicial hearing would have been. However, *Quisenberry* does not stand for that proposition and is readily distinguishable from this case. First of all, *Quisenberry* deals with a disconnection petition under a prior statute (" 'An act in relation to the disconnection of territory from cities and villages' \*\*\* (Laws of 1879, p. 77)" (*Quisenberry*, 253 Ill. at 371, 97 N.E. at 698)), not an annexation petition. In discussing the jurisdiction of a municipality to act, the court said the city council in determining the sufficiency of the petition to disconnect has the authority to hear and determine any question, and its determination is, in effect, a judgment equivalent to a pronouncement of a legally created court of limited jurisdiction such that any error which may have been committed may not be attacked indirectly. Nowhere

does *Quisenberry* say the city council must conduct a hearing similar to a court proceeding.

The statute sets out several requirements which must be met:

(1) the territory to be annexed must not be within the corporate limits of any municipality;

(2) the territory to be annexed must be contiguous to the territory of the annexing municipality;

(3) if there are electors residing therein, a written petition signed by the owners of record and at least 51% of the electors residing therein must be filed with the municipal clerk;

(4) the petition must be under oath;

(5) the corporate authorities may then consider annexation, but may do so only if approved by a majority vote;

(6) the votes must be entered on the legislative record, by 'yeas' and 'nays'; and

(7) a copy of the ordinance together with an accurate map of the annexed territory must be recorded in the County Recorder's Office.

Leland Grove really does not challenge many of these requirements. Relator argues 51% of the electors did not sign the petition, they did not sign under oath, and the vote of the Springfield city council was not properly recorded on the legislative record.

"Electors" are registered voters. (Ill. Rev. Stat. 1983, ch 24, par. 7—1—1.1.) The only two electors residing on the annexed territory to sign the petition were Donovan and Whitehead. There is no testimony establishing that any other electors resided thereon. Relator relies on the argument that Whitehead did not sign under oath because Hoffee did not have Whitehead raise his right hand and swear to the statements in the petition as described in section 3 of "An Act to revise the law in relation to oaths and affirmations." Ill. Rev. Stat. 1987, ch. 101, par. 3.

Whitehead said he did not understand he was signing under oath. He did indicate he "glanced" at the petition before signing, however. The acknowledgement section of the petition states:

"The undersigned, each being first duly sworn upon his separate oath deposes and states that he has subscribed to the foregoing Petition for Annexation and has read the same before signing; and that the statements made therein are true and correct, and that all electors who reside upon said above described property join in this Petition for Annexation."

Whitehead's signature is the first signature thereunder. And, Hoffee testified he· explained to Whitehead he was signing under oath. The

trial court could find that Whitehead understood he was signing under oath at the time he signed, but has since forgotten that fact.

██ █ A reviewing court will not substitute its judgment for that of the trial court, sitting as a trier of fact, in passing upon the weight of evidence and credibility of witnesses, unless the findings are against the manifest weight of the evidence. (*MBL (USA) Corp. v. Diekman* (1983), 112 Ill. App. 3d 229, 445 N.E.2d 418.) A reviewing court will not reverse merely because the trier of fact could have found differently or because the members of the reviewing court conclude that other conclusions would have been more reasonable. (See *Kupcikevicius v. Fitzgibbons* (1976), 41 Ill. App. 3d 405, 354 N.E.2d 434.) Furthermore, the failure of Hoffee to require the signatories to raise their right hand does not lead to the indisputable conclusion that Whitehead did not sign under oath. See *In re Rice* (1962), 35 Ill. App. 2d 79, 181 N.E.2d 742.

██ Whether the vote of the Springfield city council was properly recorded on the legislative record depends on how this court views the tape recording of the council meeting. First, it must be determined whether the trial court erred in allowing Springfield to reopen its case to place the tape into evidence. The parties rely on three cases. *Weiner v. Exchange National Bank* (1980), 87 Ill. App. 3d 1012, 410 N.E.2d 237, is distinguishable from the case at bar because the new evidence was attempted to be offered for the first time in a posttrial motion. In *Laff v. John O. Butler Co.* (1978), 64 Ill. App. 3d 603, 381 N.E.2d 423, *cert. denied* (1979), 444 U.S. 844, 62 L. Ed. 2d 57, 100 S. Ct. 88, the trial court was determined not to have committed an abuse of discretion in refusing to reopen the evidence where the evidence sought to be added would not materially affect the outcome of the case. In the case at bar, if the evidence of the tape had not been presented, Springfield would not have met its burden of proving strict compliance with the statute. Therefore, *Laff*, too, is distinguishable from the case at bar. The remaining case, *Exchange National Bank v. Heller* (1975), 26 Ill. App. 3d 675, 325 N.E.2d 328, although also a case in which a refusal to reopen the case for additional evidence was affirmed, states the applicable general principles of law:

"Once a case has been closed the decision as to whether a party may reopen the proceeding to introduce further testimony is within the sound discretion of the trial court. This decision will not be upset by a reviewing court unless it appears that discretion was clearly abused and that failure to reopen proofs resulted in substantial injustice. (*Department of Public Works v. First National Bank*, 61 Ill. App. 2d 78, 209 N.E.2d

21; *Country Life Insurance Co. v. Goffinet*, 117 Ill. App. 2d 338, 254 N.E.2d 281.) While such discretion should be exercised liberally where evidence was not accessible or was inadvertently overlooked, it should never be exercised to promote or countenance unfairness in the conduct of a trial. (*Herricks v. Chicago & E.I.R.R. Co.*, 257 Ill. 264, 100 N.E. 897.) Thus, if the proof offered is of such a character that it could have been produced at an earlier time, a court will not be deemed to have abused its discretion in denying its introduction into evidence. Similarly, it is not error to deny the introduction of testimony, after the close of proofs, which 'if given, could not materially have affected the outcome of the trial.' *Department of Public Works v. First National Bank*, 61 Ill. App. 2d 78, 83, 209 N.E.2d 21." (*Exchange National Bank*, 26 Ill. App. 3d at 682-83, 325 N.E.2d at 333-34.)

Had Springfield been denied the opportunity to present the evidence, a substantial injustice would have been done to Springfield. Therefore, the trial court did not commit an abuse of discretion in allowing Springfield to reopen its case for the purpose of presenting additional evidence.

Leland Grove does not argue that a roll call vote was not conducted in the Springfield city council meeting on July 30, 1985, but instead suggests the tape recording was inappropriately used to prove such a vote was taken. The parties agree the journal of the Springfield city council records the passage of the annexation ordinance of July 30, 1985, by a vote of five yeas and zero nays. In *People ex rel. Anderson v. Chicago & North Western Ry. Co.* (1947), 396 Ill. 466, 71 N.E.2d 701, the court considered the lack of a roll call vote under a statute (Ill. Rev. Stat. 1943, ch. 24, par. 9—47) requiring of ordinances for expenditures and appropriations that the "yeas and nays shall be taken upon the question of the passage of the designated ordinances *** and recorded in the journal of the city council." (*Anderson*, 396 Ill. at 468, 71 N.E.2d at 701.) The Illinois Supreme Court decided this means a roll call vote must be taken and the vote of each individual member must be recorded. In *Anderson*, the vote was recorded as, "Voting Aye 5. Nay None. Carried." (*Anderson*, 396 Ill. at 467, 71 N.E.2d at 701.) The Illinois Supreme Court concluded such a notation in the record requires the court to speculate the five members present were in fact the five persons voting "aye."

The City of Springfield seems to concede that *Anderson* requires a roll call vote be recorded in the case at bar. Therefore, the introduction of the tape was necessary to show that a roll call vote of the

council members was taken.

Leland Grove interposes two objections to the admissibility of the tape recording: (1) the annexation statute and the Municipal Code require the vote to be written, not voice-recorded; and (2) a proper foundation was not made for the introduction of the tape recording into evidence. Section 3—11—17 of the Illinois Municipal Code states:

> "The passage of all ordinances for whatever purpose *** shall require the concurrence of a majority of all members then holding office on the city council, including the mayor, unless otherwise expressly provided by this Code or any other act governing the passage of any ordinance. *** The yeas and nays shall be taken upon the question of the passage of the designated ordinances *** and recorded in the journal of the city council." (Ill. Rev. Stat. 1985, ch. 24, par. 3—11—17.)

Since a roll call vote was in fact taken and since the City Council has the right to amend its journal at any time to make the record reflect the facts (*Robbins v. City of Herrin* (1920), 293 Ill. 133, 127 N.E. 353; *Parsons v. City of Herrin* (1920), 293 Ill. 218, 127 N.E. 356), the question appears to be of little consequence.

■ With regard to the propriety of the foundation for the admission of the tape recording, Leland Grove relies on a case that does not involve a voice recording. *Woolley v. Hafner's Wagon Wheel* (1961), 22 Ill. 2d 413, 176 N.E.2d 757, discusses the admissibility in a civil case of the results of a blood-alcohol test to establish intoxication. The criminal cases cited by Springfield all deal with documents. In Illinois, a voice recording may be submitted instead of a human witness as long as proper foundation has been laid to establish the authenticity and reliability of the tape recording. *Belfield v. Coop* (1956), 8 Ill. 2d 293, 134 N.E.2d 249.

At the hearing, Leland Grove's attorney objected to the "foundation" to using the transcript because Springfield failed to show what is in the transcript is an accurate identification of the voices the witness heard on the tape. After this objection, the court asked counsel for Springfield to lay a better foundation because the court did not understand to which tape the witness was referring. Therefore, Springfield's counsel elicited from Graves the facts that the recording was made on July 30, 1985, at the council meeting, that council meetings are routinely recorded, that she recognized the voices of each of the council members then in office, and that the voices of each of them were on the tape in question. Before listening to the recording, the trial court overruled Leland Grove's objection that the proper foundation for the admission of this tape had been laid because no tes-

timony had been given concerning the condition of the tape from the date of recording to present and the witness was not present when the recording was made. On cross-examination, Graves stated she was not present at the time the recording was made. She and the previous city clerk had possession of the tape since its recording. She did not listen to the entire tape recording, and she was not aware of changes being made to any portion of the tape. After Graves completed testifying, Springfield tendered the transcript. Leland Grove's counsel objected to the transcript being placed into evidence, suggesting that the tape was all that was being put into evidence. When Springfield's counsel tendered the tape recording and the transcript, no further objection was made.

■ The rules relating to the admissibility of voice recordings are summarized in the treatise, Handbook of Illinois Evidence, as follows:

> "Sound recording of voices is authenticated if a proper foundation is laid, including identification of the speakers. *Belfield v. Coop*, 8 Ill. 2d 293, 134 N.E.2d 249 (1956). The specific requirements for authentication in addition to voice identification of sound recordings of any kind vary depending upon the circumstances. Thus, for example, a person who overheard or participated in the entire conversation may lay a proper foundation by testifying that the sound recording fully, fairly, and accurately reflects the conversation. *People v. Lewis*, 84 Ill. App. 566, 40 Ill. Dec. 310, 406 N.E.2d 11 (1980). In other instances a mechanical capability plus chain-of-custody foundation, including testimony as to (1) capability of the device for recording, (2) competency of the operator, (3) proper operation of the device, (4) preservation of the recording with no changes, additions, or deletions, as well as (5) identification of the speakers, may be necessary. *People v. Estrada*, 91 Ill. App. 3d 228, 46 Ill. Dec. 628, 414 N.E.2d 512 (1980) (*quoting* Handbook)." (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §901.6, at 634 (4th ed. 1984).)

Since Graves did not participate in the entire conversation, the mechanical capability plus chain-of-custody foundation must be utilized.

■ On appeal, Leland Grove's only challenge to the authenticity of the recording concerns the fact that the prior city clerk was not also called to testify concerning the chain of custody. Leland Grove's argument does not raise any questions concerning criteria (1), (2), or (3), and therefore, Leland Grove has waived any such argument for the purpose of appeal. Graves satisfied criterion (5) by identifying the voices of the speakers. As to criterion (4), Graves testified the tape

was maintained in the possession of the city clerk's office and she knew of no changes in the tape recording. This is sufficient to satisfy the fourth criterion. Therefore, the burden shifted to Leland Grove to present evidence which would dispute the security procedures in the city clerk's office or would otherwise bring into question the reliability of the voice recording.

The last contention to consider is Leland Grove's assertion that the notices to the trustees of the fire protection district and township concerning the Springfield annexation ordinance were defective. At the time the notices concerning Springfield's annexation ordinance were sent, the section of the Code governing such notices stated, in relevant part:

"When any land proposed to be annexed is part of any Fire Protection District or of any Public Library District, and the annexing municipality provides fire protection or a public library, as the case may be, the Trustees of each District shall be notified in writing by certified or registered mail before any court hearing or other action is taken for annexation. Such notice shall be served 10 days in advance. An affidavit that service of notice has been had as provided by this Section must be filed with the clerk of the court in which such annexation proceedings are pending or will be instituted or, when no court proceedings are involved, with the recorder for the county where such land is situated. No annexation of such land is effective unless service is had and the affidavit filed as provided in this Section.

*** When any land proposed to be annexed includes any highway under the jurisdiction of any township, the Township Commissioner of Highways and the Board of Town Trustees shall be notified in writing by certified or registered mail before any court hearing or other action is taken for annexation." Ill. Rev. Stat. 1983, ch. 24, par. 7—1—1.

Leland Grove relies on *In re Annexation to the Village of Green Oaks* (1978), 58 Ill. App. 3d 842, 374 N.E.2d 854, wherein it was held that the failure to give proper notice to the trustees of a fire protection district renders the *petition* void. On the other hand, in *People ex rel. County of St. Clair v. City of Belleville* (1981), 84 Ill. 2d 1, 417 N.E.2d 125, the Illinois Supreme Court held the annexation *ordinance* to be invalid where proper notice was not given the trustees of the fire protection district. The statute says the annexation is not effective if proper notice is not given to trustees of the fire protection district, but does not say the petition is void.

■■ The statute requires notice to each individual trustee of the fire protection district. Notice to one trustee is not notice to all trustees. (*People ex rel. County of St. Clair v. City of Belleville* (1981), 84 Ill. 2d 1, 417 N.E.2d 125.) Yet, the evidence in this case is that every trustee of the South Oak Knolls Fire Protection District signed an affidavit acknowledging receipt of the notice. Doyle and Ridley do not specifically recollect receiving the notice, but indicated they signed the certified mail return receipt. Muncy's 15-year-old daughter signed the certified mail return receipt for him.

Springfield argues that notice to Muncy was good since the statute refers to certified mail without specifically requiring "restricted delivery." In *Dobrowolski v. LaPorte* (1976), 38 Ill. App. 3d 492, 348 N.E.2d 237, it was decided that the supreme court rules requiring service of a small claim summons and complaint on a defendant by certified mail, return receipt requested, did not require delivery to the addressee only. (58 Ill. 2d R. 284(b).) Subsequently, in 1978, the rule was modified to require restricted delivery. (107 Ill. 2d R. 284(b).) Similar modifications were made in 1978 to the rules relating to notice to defaulting parties and serving subpoenas for depositions. (107 Ill. 2d Rules 105, 204; see Ill. Ann. Stat., ch. 110A, par. 105, Historical & Practice Notes, at 144-46 (Smith-Hurd 1985); Ill. Ann. Stat., ch. 110A, par. 204, Committee Comments, at 268, Historical & Practice Notes, at 268-70 (Smith-Hurd 1985).) We agree with Springfield's position that restricted delivery was not required in this case, and in light of the fact Muncy signed an affidavit acknowledging receipt, the trial court could reasonably find each of the fire protection district trustees received notice of the Springfield annexation proceeding.

Leland Grove also raises the question of the failure to give notice to the supervisor of Woodside Township, Donald Casper. Springfield seems to concede notice was not sent to Casper, but argues that fact does not render the annexation ineffective.

Springfield relies on *People ex rel. Armentrout v. City of Aurora* (1981), 95 Ill. App. 3d 983, 420 N.E.2d 833. In *Armentrout*, the court, after deciding the annexation was invalid for failure to provide notice to the individual trustees of the fire protection district, went on to discuss the statutory provision regarding notice to township officials. The court stated:

> "The burden is on the defendant in an annexation case to prove compliance with the statute. (*People ex rel. Hopf v. Village of Bensenville* (1971), 132 Ill. App. 2d 907, 910 [,272 N.E.2d 50].) Aurora alleged that notice to the township highway commissioner was not given, which sufficiently raised the

issue to put the burden on Montgomery to either prove notice was given or prove facts which showed it was not required. (See *People ex rel. Village of Northbrook v. Highland Park* (1976), 35 Ill. App. 3d 435, 439 [, 342 N.E.2d 196].) We conclude that the testimony of the maintenance supervisor was insufficient to prove that Ashland Avenue was not a township road.

Montgomery alternatively argues that compliance with notice to the Aurora Township commissioner of highways or the board of town auditors is not a fatal defect. In Section 7—1—1 of the Illinois Municipal Code, in the second paragraph that provides for annexation where any land is part of any fire protection district or of any public library district, there is the concluding sentence: 'No annexation of such land is effective unless service is had and the affidavit filed as provided in this Section.' (Ill. Rev. Stat. 1977, ch. 24, par. 7—1—1.) However, the following paragraph providing for notice to the commissioner of highways and auditors was added in 1975 and in this paragraph there is no affidavit requirement for the notice given to the township commissioner. While in the added section there is a provision that the township commissioner of highways and the board of town auditors shall be notified in writing by certified or registered mail before any court hearing or other action is taken for annexation, there is no language indicating that lack of notice renders an annexation ineffective in that portion of the statute. We conclude that the statute reasonably construed evinces an intention to treat the notice to fire protection districts and library districts differently from highway commissioners and town auditors.

We believe that the general scheme of the applicable statutes confirms the result that in the latter instance the failure to give the required notice does not invalidate the annexation. Fire protection districts and library districts are specifically authorized to object to disconnection by statute (see Ill. Rev. Stat. 1977, ch. 81, par. 1002—9.1; ch. 127½, par. 38.3), but we can find no statutory provision authorizing a township to object. Since the township officials cannot prevent the annexation, lack of notice to them should not be considered a fatal defect." *Armentrout*, 95 Ill. App. 3d at 986-87, 420 N.E.2d at 836-37.

 In the reply brief, Leland Grove tries to distinguish *Armentrout* by suggesting that case did not involve a township which would lose territory and part of its tax base by the annexation. The testi-

mony in the case at bar was that the township would also not need to provide services. However, Leland Grove does not point to any cases or statutes which would require a result different than that reached in *Armentrout*. It seems significant that the legislature has not amended the statute. The failure to modify the statute indicates an agreement with the construction placed on the statute by *Armentrout*. (*People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658.) Therefore, we hold that the failure to provide notice to the Woodside Township supervisor does not invalidate the Springfield annexation ordinance which is the subject of this litigation.

Accordingly, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

LUND and STEIGMANN, JJ., concur.